IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| VAL JAVIER | ) | Civ. No. 21-00191 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KILOLO KIJAKAZI, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER AFFIRMING THE DECISION OF THE
SOCIAL SECURITY ADMINISTRATION COMMISSIONER**

This case concerns Plaintiff Val Javier's second application to the Social Security Administration for Disability Insurance Benefits.  Plaintiff appeals the Social Security Administration Commissioner's denial of his second application.

On August 14, 2015, Plaintiff filed his first application for Disability Insurance Benefits with the Social Security Administration.  Plaintiff's application alleged the following physical and mental impairments: degenerative disc disease of the spine; degenerative changes in the right lower extremity; history of fracture of the right lower extremity; obesity; hypertension; depressive disorder; anxiety disorder; psychotic disorder; and history of brain injury.

Plaintiff's first application was denied at each stage of the administrative process.  The denial of Plaintiff's first

1

application became the final decision of the Social Security Administration Commissioner.

When a claimant's application for Disability Insurance Benefits is denied and is not appealed, the decision denying benefits becomes binding and creates a presumption of continuing nondisability.  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).  In a subsequent application, the claimant "must prove 'changed circumstances' indicating a greater disability."  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988).

On September 13, 2018, Plaintiff filed a second application for Disability Insurance Benefits.  Plaintiff's second application alleged the same physical and mental impairments as his first application, but alleged an additional impairment due to methamphetamine use.  The Social Security Administration determined that this additional impairment satisfied Plaintiff's burden of demonstrating changed circumstances.

Plaintiff's second application was denied by the Social Security Administration as an initial matter.  The agency also denied his request for reconsideration.  Following an administrative hearing, the Administrative Law Judge ("ALJ") denied Plaintiff's second application and held that Plaintiff was not disabled from October 12, 2017 through November 2, 2020.

The Social Security Administration Appeals Council denied Plaintiff's request for further review of his second application,

rendering the ALJ's decision the final administrative decision of the Social Security Commissioner.

The Court **AFFIRMS** the decision of the Social Security Administration Commissioner to deny Plaintiff's second application for Disability Insurance Benefits.

## PROCEDURAL HISTORY

**Plaintiff's Second Application:**

On September 13, 2018, Plaintiff Val Javier filed his second application for Disability Insurance Benefits.  (Administrative Record [hereinafter "AR"] at pp. 213-19, ECF No. 22).

On December 7, 2018, Plaintiff amended his application for Disability Insurance Benefits.  (Id. at pp. 220-21).

On March 22, 2019, the Social Security Administration denied Plaintiff's application.  (Id. at pp. 150-53).

On March 31, 2019, Plaintiff sought reconsideration of the Social Security Administration's decision.  (Id. at p. 154).

On July 16, 2019, the Social Security Administration denied Plaintiff's application upon reconsideration.  (Id. at pp. 155-60).

On July 22, 2019, Plaintiff requested a hearing before an ALJ.  (Id. at pp. 161-62).

On October 21, 2020, the ALJ held a hearing on Plaintiff's

application.  (Id. at pp. 64-89).

At the October 21, 2020 hearing, the Plaintiff further amended his application for Disability Insurance Benefits.  (Id.)

On November 2, 2020, the ALJ issued a written decision denying Plaintiff's application.  (Id. at pp. 15-30).

On March 16, 2021, the Social Security Administration Appeals Council denied Plaintiff's request for further review of the ALJ's decision. (Id. at pp. 1-6). The ALJ's decision became the final administrative decision by Social Security Administration Commissioner after Plaintiff was denied further review.

On April 20, 2021, Plaintiff filed a Complaint in this Court seeking judicial review of the Social Security Administration Commissioner's denial of his application. (ECF No. 1).

On September 27, 2021, Defendant filed the Administrative Record.  (ECF No. 22).

On November 22, 2021, Plaintiff filed PLAINTIFF'S BRIEF IN SUPPORT OF REMAND.  (ECF No. 24).

On March 10, 2022, Defendant filed DEFENDANT'S ANSWERING BRIEF.  (ECF No. 28).

On March 21, 2022, Plaintiff filed PLAINTIFF'S REPLY BRIEF. (ECF No. 29).

On May 11, 2022, Defendant filed NOTICE OF SUPPLEMENTAL

AUTHORITIES.  (ECF No. 31).

On May 31, 2022, Plaintiff filed a Reply to Defendant's
Notice of Supplemental Authorities.  (ECF No. 34).

On June 27, 2022, the Court held a hearing on Plaintiff's
appeal of the decision of the Social Security Administration
Commissioner.  (ECF No. 36).

## BACKGROUND

### I.    Plaintiff's History of Social Security Applications

This is Plaintiff's second application for Disability
Insurance Benefits.

### A.    First Application

Plaintiff filed his first application for Disability
Insurance Benefits on August 14, 2015, alleging an onset date of
disability on July 24, 2015.  (AR at p. 93, ECF No. 22).
Plaintiff's first application was denied as an initial matter and
then again upon reconsideration.  (Id.)

Following a hearing, the ALJ issued a written decision
denying Plaintiff's first application on October 11, 2017.  (Id.
at pp. 93-104).  The ALJ found that Plaintiff suffered from the
following severe impairments: degenerative disc disease of the
spine; degenerative changes in the right lower extremity; history
of fracture of the right lower extremity; obesity; hypertension;
depressive disorder; anxiety disorder; and possible unspecified

psychosis versus sequelae[1] of brain injury.  (Id. at p. 95).
After careful consideration of the record, including Plaintiff's
testimony and objective medical evidence, the ALJ determined that
Plaintiff was not disabled and had a residual functional capacity
to perform medium work with certain limitations.  (Id. at pp. 97-
98).

The Social Security Administration Appeals Council denied
Plaintiff's request for review of the ALJ's October 11, 2017
decision, rendering it the agency's final administrative decision
regarding Plaintiff's first application.

## B.   Second Application

Plaintiff filed his second application for Disability
Insurance Benefits on September 13, 2018.

Plaintiff's second application for Disability Insurance
Benefits alleges an onset date of disability on October 12, 2017,
the day following the period adjudicated in his first
application.

Plaintiff's second application is based on the same physical
and mental impairments as his first application, but it includes
one changed circumstance: impairment resulting from
methamphetamine use.

_____

[1] The term "sequela" refers to the continuing aftereffects
of an injury.

The ALJ assigned to review Plaintiff's second application found that the additional impairment of methamphetamine use was sufficient to rebut the presumption of continuing nondisability. (AR at pp. 15-16, ECF No. 22).

The ALJ declined to adopt findings made by the prior ALJ assigned to Plaintiff's first application.  Specifically, the second ALJ declined to adopt the first ALJ's findings regarding Plaintiff's residual functional capacity as a result of new evidence in the updated record for the period beginning October 12, 2017.

The second ALJ found that Plaintiff is not disabled and is capable of performing light work, with certain limitations.  (Id. at p. 21).  The decision denying Plaintiff's second application became the final administrative decision of the Social Security Commissioner.

## II.  Plaintiff's Education and Work History

Plaintiff is a forty-nine year old man.  (AR at p. 231, ECF No. 22).  He attended school through the twelfth grade, but he did not graduate from high school.  (Id. at p. 36).

Prior to 2004, Plaintiff worked sorting nuts for Mauna Loa Macadamia.  (Id. at pp. 41-42).

In 2004, Plaintiff worked in the laundry services industry as a linen attendant, feeding textiles through an ironing

machine.  (Id. at p. 40).

From July 2005 to July 2015, Plaintiff worked as a janitor at Mauna Kea Resort cleaning bathrooms.  (Id. at pp. 37-38). On July 24, 2015, Plaintiff took sick leave from his job and subsequently ended his employment.  (Id. at pp. 42-43).

## III. Plaintiff's Medical History

Plaintiff's application for Disability Insurance Benefits is principally based on his mental impairments.  Plaintiff alleges that anxiety, depression, and a brain injury limit his ability to work.  (AR at p. 242, ECF No. 22).

### A.    Mental Impairments

From January 2016 to July 2018, Plaintiff met with his primary care provider Dr. Roy Koga.  Plaintiff was assessed as having a "psychotic mood disorder" with "psychogenic dizziness." (AR at pp. 317-30, 350-64, ECF No. 22).  The report stated Plaintiff had an "[o]ngoing psychotic disorder with mood changes consistent with a psychotic disorder," but it asserted that Plaintiff also presented as alert and well-appearing with appropriate affect and normal speech.  (Id. at pp. 321-22).  Dr. Koga stated Plaintiff's history of traumatic brain injury resulted from a car accident in 1992.  (Id. at p. 335).

In October 2016, Plaintiff began seeing Dr. Ian Chun, a

psychiatrist, for mental health treatment.  (Id. at p. 350).  Dr. Chun referred Plaintiff to psychologist Dr. Joseph Eubanks for a neuropsychological evaluation.  (Id. at pp. 346-49).

On November 11, 2016, Dr. Eubanks administered a number of neuropsychological tests to Plaintiff.  (Id.)  Plaintiff's performance on the tests suggested "that he was unable or unwilling to put forth the effort during the evaluation to generate a valid assessment."  (Id. at p. 348).  Dr. Eubanks concluded that Plaintiff's test results could not lead to a valid interpretation to support a diagnosis of a neurocognitive deficit as a result of Plaintiff's performance.  (Id.)

From January 2017 through the end of 2019, Plaintiff continued his mental health treatment with psychiatrist Dr. Chun and his staff, including Kaidden Kelly, a Physician Assistant ("P.A. Kelly").  (See id. at pp. 365, 440).  The records of psychiatrist Dr. Chun and P.A. Kelly are combined as they worked together.  Dr. Chun and P.A. Kelly's records reflect that they diagnosed Plaintiff with a major depressive disorder with psychotic features, a history of traumatic brain injury with aftereffects of the injury, chronic pain, and generalized anxiety disorder.  (Id. at p. 365).  The reports of Dr. Chun and P.A. Kelly stated that Plaintiff occasionally used methamphetamine.  (Id. at p. 368).

Dr. Chun and P.A. Kelly conducted more than a dozen

examinations of the Plaintiff between August 24, 2017 (id. at pp. 416-17) and December 14, 2019 (id. at p. 467).

The reports reflect that Plaintiff demonstrated some signs of mental deficiencies such as depressed mood (see id. at pp. 416-17), flat affect (pp. 406-07), and simple thought processes (id. at pp. 384-85).

The examination reports also reflect positive cognitive abilities, including that Plaintiff demonstrated logical thought processes (id. at pp. 399-400), normal and intact short and long term memory (id. at pp. 402-03), and normal attention span and concentration ability. (Id. at p. 461).

Dr. Chun and P.A. Kelly's reports reflect that Plaintiff showed no signs of delusions, suicidal ideation, hallucinations, or misperceptions.  Plaintiff presented as alert and attentive, grossly oriented, appropriately groomed, emotionally calm, cooperative, and friendly.

From July 2019 through July 2020, Plaintiff began seeing a new primary care provider, Dr. John Kurap.

Dr. Kurap examined Plaintiff on six occasions between July 19, 2019 (id. at pp. 452-53) and July 20, 2020 (id. at pp. 486-87).  During each examination, Dr. Kurap found that Plaintiff exhibited unremarkable findings, including intact judgment and insight, mood and affect within normal limits, and no current suicidal or homicidal ideation.  (Id.)

On January 24, 2019 and July 15, 2019, two state agency medical consultants reviewed Plaintiff's medical records related to mental health. (Id. at pp. 122-24, 139-41). The consultants, Dr. B. Young, a psychiatrist, (id. at pp. 122-24), and Dr. Richard Kaspar, a psychologist, (id. at pp. 139-41), reviewed the records. Both state agency medical consultants concluded that Plaintiff's current mental health circumstances were consistent with a finding that he was not disabled. (Id. at pp. 122-24, 139-41).

At a hearing before the ALJ, Plaintiff testified as having extreme functional limitations due to his mental impairments. Plaintiff stated that he was "abnormal" and "disabled." (Id. at p. 79). Plaintiff claimed to experience dizziness, amnesia, and audio-visual hallucinations. (Id. at pp. 79, 81-82). Plaintiff stated that he does nothing all day except lie down. (Id.) Plaintiff stated he is unable to watch TV or read a book. (Id. at p. 81).

### B.   Physical Impairments

Plaintiff's medical records reflect a history of minor physical impairments. Plaintiff was in a car accident in 1992 that resulted in a hip fracture, but Plaintiff reported that he does not remember the accident and did not have any long term issues as a result of the accident. (Id. at pp. 335, 363).

Plaintiff's medical records reflect that at some point he was diagnosed with degenerative disc disease of the spine with a compression fracture of the L4 lumbar vertebra.  (Id. at pp. 362-63).

Numerous medical examinations, however, from October 2017 through August 2020, found Plaintiff's gait was within normal limits, full 5/5 strength in upper and lower extremities, intact sensation, and normal symmetrical deep tendon reflexes.  (See, e.g., id. at pp. 318, 471, 487).

Plaintiff's medical records reflect a diagnosis of essential hypertension, (id. at p. 488), and obesity, with Plaintiff having a BMI in the range of 31.24 to 33.74 (id. at pp. 319, 446).

## STANDARD OF REVIEW

A claimant is disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

A decision by the Commissioner of Social Security must be affirmed by the District Court if it is based on proper legal standards and the findings are supported by substantial evidence

in the record as a whole.  See 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993).

### ANALYSIS

### I.  Applicable Law

The Social Security Administration has implemented regulations establishing when a person is disabled so as to be entitled to benefits pursuant to the Social Security Act, 42 U.S.C. § 423.  The Commissioner of the Social Security Administration evaluates a disability claim using the following five-step sequential analysis:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.

(2)  Is the claimant's alleged impairment sufficiently severe to limit his ability to work?  If not, the claimant is not disabled. If so, proceed to step three.

(3)  Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)  Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step

13

five.

(5)  Does the claimant's residual functional capacity, when
     considered with the claimant's age, education, and work
     experience, allow him to adjust to other work that
     exists in significant numbers in the national economy?
     If so, the claimant is not disabled.  If not, the
     claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir.
2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

A claimant alleging disability has the burden of proof at
steps one through four, and the Commissioner has the burden of
proof at step five.  Bustamante v. Massanari, 262 F.3d 949,
953-54 (9th Cir. 2001).

## II.  **The ALJ Applied the Five-Step Evaluation**

The ALJ evaluated Plaintiff's disability claim using the
five-step analysis.

At step one, the ALJ concluded that Plaintiff has not
engaged in substantial gainful activity since his amended onset
date of disability, October 12, 2017.  (AR at p. 18, ECF No. 22).

At step two, the ALJ concluded Plaintiff had the following
severe impairments that significantly limit his ability to
perform basic work activities: degenerative disc disease of the
spine; degenerative changes in the right lower extremity; history
of fracture of the right lower extremity, with placement of
hardware; obesity; hypertension; depressive disorder; anxiety
disorder; psychotic disorder; history of brain injury; and

14

methamphetamine use.  (Id. at p. 19)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR at p. 19, ECF No. 22).

At step four, after having considered the entire record, the ALJ concluded that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with the following exceptions:

> occasional pushing and pulling with the right lower extremity; frequent use of stairs and ramps; no ropes, ladders, or scaffolds; frequent balancing, stooping, kneeling, crouching, and crawling; occasional hazardous machinery and unprotected heights; limited to simple, routine, repetitive tasks; occasional changes in the work setting; no production rate pace work; and no contact with the public, but frequent interaction with coworkers.

(AR at p. 21, ECF No. 22).

At step five, the ALJ found that, considering the Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform, such as price marker, mail sorter, and office helper.  (Id. at p. 26).

## III. The ALJ Properly Denied Plaintiff's Application

This appeal from the decision of the Social Security Administration Commissioner focuses on steps three and four of the five-step evaluation: the ALJ's findings with respect to the severity of Plaintiff's impairments and his residual functional capacity.

## A.   The ALJ's Findings at Step Three

At step three of the five-step evaluation, the ALJ made three findings regarding Plaintiff's limitations resulting from his mental impairments.

<u>First</u>, the ALJ found that Plaintiff had a mild limitation in understanding, remembering, and applying information.  (AR at p. 19, ECF No. 22).

In support of this finding, the ALJ cited mental status examinations conducted by psychiatrist Dr. Chun and his staff between August 2017 and August 2020.  Plaintiff was found to be alert and attentive, demonstrated logical thought processes and content, oriented, with intact short and long term memory, normal attention and concentration, normal awareness of current and past events, and appropriate language skills. (<u>See</u>, <u>e.g.</u>, Dr. Chun's medical records in AR at pp. 416-17, 467, ECF No. 22).

The ALJ also considered records from Plaintiff's primary care provider, Dr. Kurap.  Plaintiff exhibited intact judgment and insight, mood and affect within normal limits between July

2019 and July 2020.  (See, e.g., id. at pp. 452-53, 486-87).

Second, the ALJ found that Plaintiff had moderate
limitations in interacting with others, and adapting or managing
himself.  (See ALJ Decision in AR at p. 20, ECF No. 22).  The ALJ
acknowledged that Plaintiff testified as having a hard time
getting along with others, and that Plaintiff experiences
drowsiness and audio-visual hallucinations.  (Id.)  The ALJ cited
medical records related to Plaintiff's diagnoses for psychotic
disorder, psychogenic dizziness, and hypertension.  (Id.)

The ALJ also considered records from the mental status
examinations conducted by psychiatrist Dr. Chun and P.A. Kelly.
The records between August 2017 and December 2019 reflect some
limitations in cognitive ability, such as slowed speech and
simple thought processes.  (See, e.g., Dr. Chun's medical records
in AR at pp. 377-417, 466-67, ECF No. 22).  Other findings from
those same examinations, however, reflected that Plaintiff
generally had positive cognitive abilities, including that
Plaintiff appeared alert, attentive, well-groomed, oriented,
emotionally calm, with normal speech, and logical thought process
and content.  (Id.)

Examinations by Plaintiff's primary care physician, Dr.
Kurap, from July 2019 through July 2020 also found that Plaintiff
displayed positive cognitive attributes including intact judgment
and insight, mood and affect within normal limits, and no current

17

suicidal or homicidal ideation.  (<u>See id.</u> at pp. 452-53, 470-71, 486-87).

The ALJ determined that based on the entire record the evidence supported a moderate limitation in Plaintiff's ability to perform work.

<u>Third</u>, the ALJ found that Plaintiff had a moderate limitation with respect to concentration, persistence, and maintenance of pace.  (<u>See</u> ALJ's decision in AR at p. 20, ECF No. 22).  The ALJ declined to credit Plaintiff's testimony that he could not function at all.  The ALJ focused on the numerous records from mental health examinations conducted by psychiatrist Dr. Chun and P.A. Kelly showing that Plaintiff had normal attention span and concentration, logical thought process, intact recent and remote memory, and awareness of current and past events.  The ALJ specifically cited a mental health examination from June 12, 2019 that showed Plaintiff's language skills included the ability to correctly name objects.  (<u>Id.</u> at p. 448).

## B.   The ALJ's Findings at Step Four

At step four of the evaluation, the ALJ found that Plaintiff had the residual functional capacity to perform light work, subject to various limitations.  (AR at p. 21, ECF No. 22).  The

ALJ determined Plaintiff's residual functional capacity after "careful consideration of the entire record," including Plaintiff's medical records, hearing testimony, and other information in the record.  (<u>Id.</u>)

The ALJ imposed limitations on Plaintiff's residual functional capacity in light of the evidence in the record, including Plaintiff's diagnoses of psychotic disorder and other medical findings.  The residual functional capacity took into account Plaintiff's mild and moderate mental limitations identified in step three.  As a result of Plaintiff's mental limitations, Plaintiff's residual functional capacity was limited to "simple, routine, repetitive tasks"; only "occasional changes in the work setting"; "no production rate pace work"; and "no contact with the public, but frequent interaction with coworkers."  (<u>Id.</u>)

Although the ALJ considered all of the evidence in the record, he did not credit each piece of evidence.  For example, the ALJ did not credit all of the testimony regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms.  The ALJ explained that he did not credit portions of the testimony that were not supported or were inconsistent with the rest of the evidentiary record.  (<u>Id.</u> at p. 22).

Similarly, the ALJ considered the medical evidence present

in the record, but he did not credit all of the medical opinions in their entirety.

First, the ALJ found the state agency medical consultants' opinions dated March 22, 2019 and July 16, 2019 were unpersuasive.  (Id. at p. 22, citing to State Agency Opinions in AR at pp. 116-30, 133-47, ECF No. 22).

Both assessments found Plaintiff was not disabled and found that Plaintiff had a residual functional capacity that would allow him to engage in medium work, subject to some limitations. (Id.)  The ALJ found these opinions inconsistent with Plaintiff's medical records, particularly Plaintiff's diagnoses for psychotic disorder with mood changes, poor eye contact, slowed speech, some psychomotor retardation, flat affect, simple thought processes, and poor insight and judgment.  The evidence supported greater limitations in Plaintiff's residual functional capacity than the state agency medical consultants' opinions provided.  (ALJ Decision in AR at p. 23, ECF No. 22).

Second, the ALJ found that psychiatrist Dr. Chun and P.A. Kelly's opinions regarding Plaintiff's residual functional capacity were not persuasive.

On January 14, 2019, Dr. Chun and P.A. Kelly issued an opinion as to Plaintiff's residual functional capacity as it relates to his mental impairments.  (See Dr. Chun and P.A. Kelly

20

opinions in AR at pp. 367-68, ECF No. 22).  Dr. Chun and P.A. Kelly found Plaintiff incapable of: understanding, remembering, and applying information; interacting with coworkers, supervisors, or the public in a work setting; concentrating, persisting, or maintaining pace in a work setting; adapting to changes in work routine and managing everyday job demands.  (Id.)

The ALJ found that the record did not support such extreme limitations.  (ALJ Decision in AR at p. 22, ECF No. 22). Contrary to Dr. Chun and P.A. Kelly's January 14, 2019 opinion, numerous examinations by Dr. Chun and P.A. Kelly between August 2017 to December 2019 show that Plaintiff appeared alert, attentive, well-groomed, oriented, emotionally calm, with normal speech, and logical thought process and content.  (See e.g. Chun and Kelly medical records in AR at pp. 377-417, 450, 461, 466-67, ECF No. 22).  The same records show that Plaintiff demonstrated no suicidal ideation, hallucinations, or misperceptions.  (Id.)  Dr. Chun also found that Plaintiff was capable of managing his financial benefits without assistance.  (Id. at p. 368).  The ALJ determined that the January 14, 2019 opinion was inconsistent with the other medical reports in the record.

Plaintiff makes two main arguments on appeal:

(1)   Plaintiff argues that the ALJ erred by rejecting certain medical opinions, and

(2)  Plaintiff asserts that his residual functional capacity
     fails to account for the ALJ's findings as to
     Plaintiff's moderate limitations.

The record does not support Plaintiff's arguments.

## III. The ALJ Properly Considered the Medical Opinions

### A.    The Commissioner's Revised Regulations

On January 18, 2017, the Social Security Administration
issued revised guidance regarding the evaluation of medical
opinions.  See Revisions to Rules Regarding the Evaluation of
Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).  The
revised regulations eliminate the hierarchical treatment of
medical opinions whereby more weight was generally given to the
opinion of a treating physician than to a physician who did not
treat the claimant.  Id.

The new framework uses factors to assess the persuasiveness
of a medical opinion, the most important of which are the factors
of "supportability" and "consistency."  20 C.F.R. § 404.1520c(a).
Pursuant to the revised regulations, an ALJ is now required to
articulate how persuasive it finds all of the medical opinions in
the record and must "explain how [it] considered the
supportability and consistency factors" in reaching its findings.
 20 C.F.R. § 404.1520c(b).

22

On April 22, 2022, the Ninth Circuit Court of Appeals issued its decision in <u>Woods v. Kijakazi</u>, addressing the revised regulations.  32 F.4th 785 (9th Cir. 2022).  Prior to <u>Woods</u>, the case law in this jurisdiction required that an ALJ provide specific and legitimate reasons for rejecting an examining doctor's opinion.  <u>Id.</u> at p. 787.  Now, in light of the revised regulations, the Ninth Circuit has held that an ALJ's decision to discredit or reject a medical opinion need only be supported by substantial evidence.  <u>Id.</u>

The ALJ is required to consider all "relevant evidence," including all medical opinions, in the administrative record in determining whether a claimant is disabled.  20 C.F.R. § 404.1527.  "[I]t it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

## B.    **The ALJ Properly Considered The Medical Evidence In The Record**

Plaintiff argues that his residual functional capacity is not supported by substantial evidence because the ALJ disregarded all medical opinions in the record, including the opinions of psychiatrist Dr. Chun and P.A. Kelly.  (Pl. Mot. at 12-16, ECF

No. 24).

Contrary to Plaintiff's argument, the written decision by the ALJ is clear that he considered all of the medical opinions in the record.  The ALJ properly balanced the extreme opinions in the record as to Plaintiff's purported impairments.

On the one end, the ALJ properly rejected the opinions by the state agency medical consultants that found Plaintiff did not have any limitations to perform medium work.

In contrast, the ALJ properly declined to credit the opinions of psychiatrist Dr. Chun and P.A. Kelly that asserted that Plaintiff was fully disabled and not capable of any work. The ALJ explained that these opinions were unpersuasive because they were inconsistent with the record.  (ALJ Decision in AR at pp. 23-24, ECF No. 22).  The ALJ explained the bases for his finding that the opinions were unpersuasive.  The ALJ properly pointed out that Dr. Chun and P.A. Kelly's opinions were inconsistent with their own clinical findings.  (Id. at p. 24). The ALJ stated that these opinions were also inconsistent with other neurological exams throughout the record.  (Id.)   The ALJ's decision declining to credit these medical opinions is supported by substantial evidence.  Woods, 32 F.4th at 787.

The ALJ did not "cherry-pick" some findings over others. The ALJ explained that these extremes of opinion were

24

unpersuasive because each was inconsistent with the actual
recorded observations of Plaintiff's behavior and medical
condition.

### C.   The ALJ Did Not Substitute His Own Lay Opinion For The Medical Opinions In The Record

Plaintiff agues that the ALJ improperly relied on his own
lay opinion rather than the medical evidence.  Plaintiff's
argument is not supported by the record.

The ALJ properly declined to credit the state agency
opinions because they failed to properly consider the limitations
reflected in the medical records.  (ALJ Decision in AR at p. 23,
ECF No. 22).  The ALJ did not rely on his own lay opinion as to
Plaintiff's limitations but rather relied on the medical evidence
in the record to reject the state agency opinions.

The ALJ also properly rejected portions of the opinions of
Dr. Chun and P.A. Kelly because they were inconsistent with other
medical evidence in the record.  (Id. at p. 24).  The ALJ did not
reject these opinions because of his own lay opinion.  The ALJ
relied on the medical evidence in the record in determining
Plaintiff's residual functional capacity.

It is the function of the ALJ to resolve conflicts in the
record.  Tommasetti v. Astrue, 533 F.3d 1035, 1041-42 (9th Cir.

2008).  The ALJ appropriately found that Plaintiff's residual

functional capacity should be more restrictive than suggested by

the state agency consultants and less restrictive than

recommended by Dr. Chun and P.A. Kelly.  See, e.g., Shirley v.

Berryhill, 2018 WL 4677671, at *11 (E.D. Cal. Sept. 27, 2018).

The ALJ properly explained his findings with respect to the

medical opinions' persuasiveness pursuant to the supportability

and consistency factors.  His determination as to Plaintiff's

residual functional capacity is supported by substantial

evidence.

**IV.  The ALJ Properly Determined Plaintiff's Residual Functional Capacity**

Plaintiff argues that his residual functional capacity is

inconsistent with the ALJ's findings of moderate limitations at

step three of the evaluation.  (Pl.'s Mot. at pp. 17-24, ECF No.

24).  Plaintiff challenges the ALJ's findings in two respects:

(1)  Plaintiff challenges the ALJ's findings with respect to
     Plaintiff's ability to interact with others, and;

(2)  Plaintiff challenges the ALJ's findings with respect to
     Plaintiff's ability to concentrate, persist, and
     maintain pace.

It is the role of the ALJ to translate his findings of non-

severe mental limitations into concrete limitations in the

26

residual functional capacity.  <u>Stubbs-Danielson v. Astrue</u>, 539
F.3d 1169, 1174 (9th Cir. 2008).

### A.   Interaction with Others

The ALJ found at step three of the evaluation that Plaintiff
had moderate limitations with respect to his ability to interact
with others.  In making this determination, the ALJ relied on
Plaintiff's testimony that he perceived audio-visual
hallucinations, is persistently drowsy, and has a hard time
getting along with others.  (ALJ Decision in AR at p. 20, ECF No.
22).

Other factors supporting a moderate limitation included
evidence in the medical record that Plaintiff was diagnosed with
a psychotic disorder, experienced dizziness, presented with flat
affect, depressed mood, showed poor judgment and insight, and
made poor eye contact.  (<u>Id.</u>)

The ALJ also found there were countervailing factors,
including medical records showing that Plaintiff was alert,
attentive, calm, friendly, with normal speech, logical thought
processes, and showed no signs of delusions, hallucinations, or
misperceptions.  (<u>Id.</u>)  The ALJ weighed these factors and found
that a moderate limitation was warranted.

The ALJ took Plaintiff's moderate limitation into account in formulating the residual functional capacity.  The ALJ limited Plaintiff's capacity to work that includes "no contact with the public."  The ALJ found that the lack of public contact will insulate Plaintiff from misunderstandings and distractions.  The recommendation of "frequent interaction with coworkers" will help Plaintiff stay on task and be connected to his work environment. (Id. at p. 21).

Plaintiff argues that in order to have limited Plaintiff's residual functional capacity to "no contact with the public" and "frequent interaction with coworkers," the ALJ was required to find Plaintiff had an extreme limitation, rather than a moderate one.  Plaintiff's argument is not supported by the law.  The caselaw explains that limitations of "no contact with the public" and "frequent interaction with coworkers" are consistent with a moderate limitation rather than an extreme limitation.  See, e.g., Sehovic v. Saul, 2020 WL 3511572, at *9 (C.D. Cal. June 29, 2020).  There is nothing inconsistent with the ALJ's finding of moderate limitation at step three regarding Plaintiff's interpersonal interactions and the residual functional capacity. The objective medical evidence, in combination with Plaintiff's testimony, supports a moderate limitation regarding Plaintiff's ability to interact with others.

**B.    Concentration, Persistence, and Pace**

The ALJ found at step three of the evaluation that Plaintiff
had moderate limitations with respect to his ability to maintain
concentration, persistence, and pace.

The ALJ rejected Plaintiff's testimony that he could not
watch TV or read at all.  The ALJ found this testimony was
inconsistent with the medical findings that Plaintiff presented
with normal concentration and attention, alert, attentive,
oriented, logical, and without delusions, hallucinations, or
misperceptions.  (ALJ Decision in AR at pp. 19-21, ECF No. 22).

The ALJ found that Plaintiff had moderate limitations in
formulating the residual functional capacity.  The ALJ properly
limited Plaintiff's capacity to work that is "limited to simple,
routine, repetitive tasks," "occasional changes in the work
setting," and "no production rate pace work."  (Id. at p. 21).

Plaintiff argues such limitations do not adequately address
Plaintiff's moderate limitation with respect to concentration,
persistence, and pace.  Again, Plaintiff's argument is belied by
both the record and the caselaw.  A residual functional capacity
limited to "simple, routine, repetitive tasks" is compatible with
a moderate limitation in concentration, persistence, and pace.

Stubbs-Danielson, 539 F.3d at 1174.

The records before the Court support a moderate limitation regarding Plaintiff's ability to maintain concentration, persistence, and pace.  Plaintiff's mental health examinations conducted by Dr. Chun and P.A. Kelly during the relevant time period state that Plaintiff demonstrated "normal attention span" and "normal concentration."  (Chun and Kelly medical records in AR at pp. 377-417, 450, 461, 466-467, ECF No. 22).  The same records also showed that Plaintiff was alert, attentive, well-groomed, oriented, emotionally calm, with normal speech, and logical thought process and content.  (Id.)

The ALJ's limitations at step three were consistent with the residual functional capacity and are supported by substantial evidence.

The Court has reviewed the entire record and finds that there is substantial evidence to support the ALJ's decision. Woods, 32 F.4th at 787.

//

//

//

//

//

## <u>CONCLUSION</u>

The Social Security Administration Commissioner's decision is **AFFIRMED.**

The Clerk of Court is Ordered to **CLOSE THE CASE.**

DATED: August 11, 2022, Honolulu, Hawaii.

IT IS SO ORDERED.



Helen Gillmor
United States District Judge

<u>Val Javier v. Kilolo Kijakazi</u>, 21-cv-00191 HG-WRP, **ORDER AFFIRMING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION COMMISSIONER**